COMMONWEALTH vs. JAMES J. WOODS.

Norfolk. January 5, 1998. - March 25, 1998.

Present: WILKINS, C.J., ABRAMS, LYNCH, GREANEY, FRIED, MARSHALL, & IRELAND, JJ.

*Practice, Criminal,* Admissions and confessions, Assistance of counsel, Proba-
tion, Revocation of probation. *Evidence,* Admissions and confessions.
*Constitutional Law,* Admissions and confessions, Assistance of counsel.

At the trial of a criminal case in which inculpatory statements of the defendant
were improperly admitted in evidence without a showing of a valid waiver
of Miranda rights or a demonstration of admissibility otherwise, the error
warranted the grant of a new trial. [172-174]
Discussion with respect to a criminal defendant's claim of a right to have an
attorney present during a psychological evaluation conducted in accordance
with the terms of a validly imposed sentence of probation. [174-175]

COMPLAINT received and sworn to in the Quincy Division of
the District Court Department on October 27, 1994.

On transfer to the jury session of that division, the case was
tried before *Rosemary Minehan,* J.

A probation surrender hearing was had before *Charles E.
Black,* J.

After consolidation of the cases and a stay of execution of
sentence by the Appeals Court, the Supreme Judicial Court
transferred the case on its own initiative.

*Paul J. Klehm*[1] for the defendant.

*Varsha Kukafka,* Assistant District Attorney, for the Com-
monwealth.

LYNCH, J. The defendant was convicted of violating G. L.
c. 272, § 16 (open and gross lewdness), and was sentenced to
six months in a house of correction. The sentence was suspended
and he was placed on probation for three years. As a condition
of his probation, he was required to participate in a sex offender
evaluation and to be treated by a psychologist. While his appeal
from this conviction was pending, his probation was revoked
for failure to participate in the evaluation, and he filed a separate

[1]The defendant's counsel on appeal was not his counsel at trial.

appeal from the probation revocation. A single justice of the Appeals Court consolidated the two appeals and ordered a stay of execution of sentence. We transferred the case here on our own motion. We now reverse the conviction and remand the case for a new trial.

The jury could have found that, on October 26, 1994, three Massachusetts Bay Transportation Authority (MBTA) police officers arrested the defendant after one of the arresting officers observed him masturbating while seated in the passenger compartment of an MBTA subway train.

*The appeal from the defendant's conviction.* In his appeal from his conviction, the defendant argues that the judge erred in failing to grant his request for a continuance of his trial[2] and by admitting in evidence statements he made to the police. In the appeal from his probation revocation he contends that, under the Fifth Amendment to the United States Constitution and art. 12 of the Massachusetts Declaration of Rights, he cannot be compelled, as a condition of his probation, to discuss with a psychologist the crime of which he has been convicted. He also contends that he has a right to have his lawyer present during sex offender counseling.

The relatively simple issues underlying this appeal are unnecessarily complicated by an inadequate record, insufficient preservation of the issues below, and the inability or unwillingness of counsel on appeal to recognize and to deal with these inadequacies.

*Violation of the defendant's Miranda rights.* The defendant argues that the judge erroneously admitted certain of his statements, in violation of his Miranda rights. We note at the outset that the defendant did not file a pretrial motion to suppress or move for a voir dire, which would have been the proper methods for challenging the admissibility of statements allegedly obtained in violation of the Miranda standards. *Commonwealth v. Woods,* 419 Mass. 366, 370 (1995). In certain limited circumstances a defendant may object at trial to the admission of statements allegedly made without benefit of Miranda warnings even where the defendant has not adhered to the preferred procedures. *Id.*

Here, although the defendant did not follow the proper

---

[2]Because of the view we take of the case it is unnecessary for us to discuss the defendant's appeal from the denial of his motion for a continuance of his trial.

procedures, he did file a motion in limine requesting that the judge require the prosecutor to lay a foundation prior to the use of such statements because of Miranda "charges,"[3] which was denied. In discussing the motion in limine both counsel and the judge assumed that the officer would quote the defendant as saying, "I thought she liked me. That's why I did it." It is also clear that counsel, who had not been the defendant's original counsel, was attempting to preserve a Miranda objection to the expected testimony. The defendant's objection to the denial of his motion in limine is not pressed on appeal. The prosecutor then included in her opening that the defendant stated at the time of his arrest, "I thought you were interested in me. That's why I did it." There was no objection to the opening statement.

On direct examination of the arresting officer by the prosecution, the following exchange occurred:

*Q*:     "Officer when you identified yourself as police officers did [the defendant] say anything to you?"

*A*:     "Yes, he . . . ."

DEFENSE COUNSEL:     "I object."

THE JUDGE:     "Overruled."

*A*:     "Yes, he stated to my partners that he thought I was interested in him. He thought I liked him."

At this time the officer did not add the phrase, "That's why I did it."

On cross-examination, defense counsel asked the officer:·

*Q*:     "You told us did you not that the defense said, 'I thought you were interested in me.' Is that true?"

*A*:     "Yes."

*Q*:     "You did not respond to that."

*A*:     "No."

*Q*:     "You told us he said that's why I did it."

*A*:     "That's correct."

---

[3]This word is probably a transcription error because the statement makes no sense and because the transcript is replete with other misinterpretations and misspellings. For example, the motion in limine is called a "motion to eliminate."

On cross-examination of the defendant the prosecutor asked without objection:

*Q*:  "At some point [the officer] said to you why did you do that, is that right?"

*A*:  "Yes that was about ten minutes later."

*Q*:  "And your answer was because I thought she was interested in me."

*A*:  "Yes, that's correct."

At the close of the evidence, the following exchange took place at sidebar:

> DEFENSE COUNSEL: "I made a motion eliminating [*sic*] relative to any conversation with my client and that motion was denied and the trial proceeded. During the cross examination with my client, I believe it was highly improper for a prosecutor to suggest to my client in any affirmation to do anything when in fact she knows the law is otherwise. In fact there is no evidence in this case that I'm aware of, maybe I missed it, that [the defendant] was advised of his rights, so with that the case, and I don't think it is uncontroversy, [*sic*] that testimony took place in the downtown Boston headquarters. I believe that the suggestion to this jury by the prosecutor that my client had any responsibility I'm going to move to administer a mistrial based on that, your honor."

> THE PROSECUTOR: "[I]f I understand the testimony, the statements that the defendant made on the landing of the 'T.' And I believe when he took the stand I had the right to ask him questions as to what he said at that time."

The judge denied the motion for a mistrial.

The Commonwealth defends the admissibility of the statement as an unsolicited spontaneous statement for which no Miranda warning was required. *Commonwealth* v. *Lanoue*, 392 Mass. 583, 588 (1984). The Commonwealth's position is bolstered by the fact that evidence suggests that the defendant's statement was spontaneously uttered, at least in part. The officer testified that she did not know to whom the defendant was speaking and that he was speaking out, shouting at her and her two partners that "he thought I was interested in him." The fact

that the defendant repeated his statement about "a dozen times" and that he was not talking to anyone in particular, indicates that his statement was spontaneous and unsolicited. However, the officer did not say, nor was she asked by the defense, whether she or her partners subjected the defendant to any direct questioning prior to his making the statements. On the other hand, the prosecutor's question to the defendant on cross-examination is premised on the defendant's statement being in response to the officer's question, "Why did you do it?"[4]

Although spontaneous custodial statements may be admitted in the absence of Miranda warnings, *Commonwealth* v. *Lanoue*, *supra* (defendant's spontaneous inculpatory statement properly admissible and determination was properly within judge's assessment of witness's credibility), Miranda warnings are required when a person in custody is subjected to either express questioning or its functional equivalent. *Commonwealth* v. *Sheriff*, 425 Mass. 186, 197 (1997), citing *Rhode Island* v. *Innis*, 446 U.S. 291, 300-301 (1980).[5]

We therefore conclude that it was error to admit the statement. In reaching this conclusion we note that the prosecution's question assumes that the defendant's statement, "That's why I did it," at least was in response to police questioning. The statement, "That's why I did it," was inculpatory in the extreme. There is no suggestion in the record that Miranda warnings were ever given. The only evidence against the defendant apart from his statement was the officer's testimony. No one else testified that they saw an incident, including the other two officers who were on the train. Although the defendant failed to file a pretrial motion to suppress, he did attempt to preserve the issue in his inartful pretrial motion in limine and he did object when the arresting officer was first asked what the defendant said, and at the close of the evidence he attempted to preserve the issue with a motion for a mistrial. On this confused record

---

[4]The defendant does not argue that he was subjected to any police coercion or any improper practices amounting to the functional equivalent of an interrogation. Nor does the defendant argue that he was under the influence of intoxicating substances or otherwise incapacitated when he made the statements to the police.

[5]We note the defendant's argument that the prosecution's use of his inculpatory statements during opening statement and closing argument was improper, rising to the level of prosecutorial misconduct. In view of the judge's ruling, the prosecutor cannot be criticized for making use of this evidence even if the judge's rulings are ultimately determined to be erroneous.

we treat the defendant's objection as properly preserved. We reverse the defendant's conviction and order that he be afforded a new trial. On retrial the defendant's inculpatory statements shall not be admitted unless it is found that they were spontaneous or that he spoke after a knowing waiver of proper Miranda rights.[6]

Because we reverse the conviction, it follows that the terms of his probation based on that conviction are vacated. We note, however, that, were the matter before us, we would regard as doubtful the validity of the proposition that the defendant has a right to have an attorney present at a psychological evaluation conducted in accordance with the terms of validly imposed probation.[7] Under the Sixth Amendment to the United States Constitution and art. 12, the defendant has a right to counsel at every "critical stage" of the criminal process. See *United States* v. *Wade*, 388 U.S. 218 (1967) (postindictment lineup); *Gideon* v. *Wainwright*, 372 U.S. 335 (1963) (trial); *Commonwealth* v. *Faulkner*, 418 Mass. 352, 359 (1994) (probation revocation proceeding where probationer may be subject to imprisonment); *Commonwealth* v. *Donovan*, 392 Mass. 647, cert. denied, 469 U.S. 1038 (1984) (probable cause hearing); *Osborne* v. *Commonwealth*, 378 Mass. 104 (1979) (sentencing); *Croteau, petitioner*, 353 Mass. 736 (1968) (appeal of sentence). Cf. *United States* v. *Gouveia*, 467 U.S. 180 (1984) (no right to counsel during administrative detention prior to indictment); *Commonwealth* v. *Trapp*, 423 Mass. 356, 358-359, cert. denied, 519 U.S. 1045 (1996) (postarraignment psychiatric evaluation by Commonwealth expert not "critical stage" of criminal process).

A postconviction probationary evaluation is not a criminal proceeding, let alone a critical stage entitling a defendant to protection under either the Sixth Amendment or art. 12. Therefore, the right to counsel does not apply. A probationer is no longer considered a criminal defendant because he has

---

[6]We do not reach the question whether the humane practice rule was also violated.

[7]As of the date of the revocation hearing (February 27, 1996), the defendant's appeals from the conviction were pending before the Appeals Court. The judge, on defense counsel's urging, agreed to delay sentencing of the defendant for two weeks to await a ruling by the Appeals Court. The sentence to be imposed on the revocation of probation remains under a stay of execution.

already been convicted of a crime at trial. See *Commonwealth v. Olsen*, 405 Mass. 491, 493 (1989).

The condition of probation requiring the defendant to undergo an evaluation for sexually aggressive behavior is similar to a psychiatric interview with a defendant who raises an insanity plea at trial. See *Blaisdell* v. *Commonwealth*, 372 Mass. 753, 767-768 (1977). In such an analogous situation we have declined to afford a defendant the right to counsel. *Commonwealth* v. *Trapp, supra.*[8] It is unlikely that we would reach a different conclusion here where the individual is on probation and no longer a criminal defendant.[9]

Therefore, the judgment is reversed, the verdict is set aside, and the case is remanded to the District Court for further proceedings consistent with this opinion.

*So ordered.*

[8]We ruled that, although the decision to undergo the evaluation is a critical stage of the criminal process, the interview itself is not. *Commonwealth* v. *Trapp*, 423 Mass. 356, 359, cert. denied, 519 U.S. 1045 (1996). We held that the decision whether to permit counsel to be present during the psychiatric examination is a matter within the sound discretion of the judge. See *Commonwealth* v. *Baldwin*, 426 Mass. 105, 110 (1997); *Commonwealth* v. *Trapp*, *supra*.

[9]We have repeatedly held that a probationer does not enjoy the full range of constitutional rights applicable to a criminal defendant. See *Commonwealth* v. *Power*, 420 Mass. 410, 417 (1995), cert. denied, 516 U.S. 1042 (1996) (probation conditions restricting probationer's fundamental rights not per se unconstitutional); *Commonwealth* v. *Marvin*, 417 Mass. 291, 292 (1994) (probationer not entitled to Sixth Amendment right to have counsel make closing argument); *Commonwealth* v. *Durling*, 407 Mass. 108, 118 (1990) (reliable hearsay evidence does not violate probationer's limited right to cross-examination); *Commonwealth* v. *Olsen*, 405 Mass. 491, 493 (1989) (unlawfully seized evidence admissible against probationer at revocation proceeding); *Commonwealth* v. *Vincente*, 405 Mass. 278, 279 (1989) (probationer's inculpatory statement obtained in violation of Miranda rights admissible at revocation hearing even if same statement suppressed at trial). Cf. *Commonwealth* v. *Faulkner*, 418 Mass. 352, 360 (1994) (probationer retains right to counsel at probation revocation hearing where he may be subject to imprisonment).